# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JANICE B. MARKEY,

    Plaintiff,

    v.

DITECH FINANCIAL LLC and FEDERAL NATIONAL MORTGAGE ASSOCIATION,

    Defendants.

No. 3:15-cv-1711 (MPS)

## RULING AND ORDER

Plaintiff Janice B. Markey brings this action against Defendants Ditech Financial LLC ("Ditech") and Federal National Mortgage Association ("Fannie Mae") for breach of contract (Count One), breach of the implied covenant of good faith and fair dealing (Count Two), and promissory estoppel (Count Three)—all in connection with Defendants' foreclosure of her home. (Complaint, ECF No. 1.) She also seeks an injunction to stay the eviction proceedings pending against her. (ECF No. 2.) The Defendants responded with a motion to dismiss the complaint and opposition to Markey's motion for injunctive relief. (ECF No. 21.) As described more fully below, the Motion to Dismiss is GRANTED in part and DENIED and part. Counts One and Two are barred by the statute of frauds, but Count Three plausibly states a claim for relief. The motion for temporary restraining order and/or preliminary injunction is DENIED because the injunction that Markey seeks is barred by the Anti-Injunction Act, 28 U.S.C. § 2283.

## I.  Factual and Procedural Background

The complaint pleads the following facts. Markey is a Connecticut resident who obtained a home mortgage loan dated July 24, 2003. (Compl. ¶ 7.) The mortgage and note were assigned

1

to various entities, and finally to Ditech (formerly known as Green Tree Servicing LLC),[1] a servicer for Fannie Mae. (*Id.* ¶ 8; ECF No. 19.) Markey defaulted on her loan, and Ditech commenced a foreclosure action. (Compl. ¶ 9.)

Either before or after that (the dates are unclear), Ditech proposed a Trial Payment Plan[2] ("TPP") agreement to undergo a mortgage modification process as dictated by the federal Home Affordable Modification Program ("HAMP") and the National Mortgage Settlement ("NMS"). (*Id.* ¶¶ 5, 13.)  The complaint describes HAMP as a federal government program that "incentivizes participating servicers to enter into agreements with struggling homeowners in order to make the monthly payments more affordable" and the NMS as "requir[ing] mortgage services [sic][3] to comply with extensive guidelines including… timely processing modification applications." (*Id.* at 5.) The TPP agreement "was in the form of written and oral communications that included expressed terms requiring the Plaintiff to provide certain information after which time the Defendants would complete a formal offer proposing a permanent loan modification." (*Id*. ¶ 5.)  Markey has provided no further details about the contents of the alleged written communications.

According to Markey, she submitted the required documents, answered all questions, and received oral confirmation that the documents had been received and reviewed. (*Id.* ¶¶ 13-14.) Ditech then told her "that her mortgage would be modified and that the pending foreclosure proceeding would be terminated." (*Id.* ¶ 13.) Markey relied on this statement and did nothing to defend herself in the foreclosure action. (*Id.* ¶¶ 14, 56.) But instead of moving forward on a

---

[1] For simplicity, I refer to the company as Ditech throughout this ruling.

[2] This is sometimes also referred to as a "Trial Period Plan." *See, e.g.,* Compl. at 1.

[3] I assume that the plaintiff meant "servicers" rather than "services."

modification proposal, Ditech delayed processing, did not offer a permanent modification of the loan, and continued to pursue foreclosure. (*Id.* ¶¶ 9, 14, 16, 18.)

Ditech ultimately obtained a strict foreclosure judgment in Connecticut Superior Court on September 8, 2014, with title vesting in Ditech on January 17, 2015. (ECF Nos. 21-4, 21-5; *Green Tree Servicing LLC v. Janice B. Markey*, No. DBD-CV14-6014390-S.) Fannie Mae then filed a summary process action in Connecticut Superior Court seeking Markey's eviction, and obtained judgment of immediate possession after default on October 29, 2015. *Federal National Mortgage Association v. Janice B. Markey*, No. DBD-CV15-6018306-S. On October 30, 2015, Markey filed a motion to open the judgment of default for failure to appear and the judgment for immediate possession, which remains pending. *Id.*

Markey filed this action on November 20, 2015, along with a motion for temporary restraining order and/or preliminary injunction seeking a stay of the summary process action. (ECF Nos. 1, 2.) On January 20, 2016, Defendants filed a consolidated motion to dismiss the complaint and opposition to the motion for preliminary injunction. (ECF No. 21.)

## II.    Standard of Review

In evaluating whether a plaintiff has stated a claim for relief, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences" in the plaintiff's favor. *Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000). Courts will not accept as true conclusory allegations and may only allow the case to proceed if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Twombly*, 550 U.S. at 554–55). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).

## III.   Discussion

### A.  Motion to Dismiss

#### i.      *Breach of Contract (Count One)*

Defendants argue that Markey's breach of contract claim must be dismissed because any alleged contract is unenforceable under the statute of frauds (among other reasons). "The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Meyers v. Livingston, Adler, Pulda, Meiklejohn and Kelly, P.C.*, 311 Conn. 282, 298, (2014) (internal citation omitted). The Connecticut statute of frauds states, in relevant part, "[n]o civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged:... (4) upon any agreement for the sale of real property or any interest in or concerning real property... or (6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars." Conn. Gen. Stat. § 52–550(a). In Connecticut, the statute of frauds "applies to purported oral modifications to existing mortgage agreements." *Halkiotis v. WMC Mortgage Corp.*, 144 F. Supp. 3d 341, 355 (D. Conn. 2015). It also applies to agreements to forbear from foreclosure. *Sovereign Bank v. Licata,* 116 Conn. App. 483, 496–97 (2009) ("If the claim were based solely on the alleged failure of [the Mortgagee] to live up to the terms of an oral forbearance agreement, it would be barred by the statute of frauds.").

At times, the complaint suggests that part of the alleged contract involved an oral agreement to forbear from foreclosure. *See* Compl. ¶ 13 ("The Plaintiff forwarded the requested

documents and received oral confirmation by the Defendants that her Documents were received and reviewed and that her mortgage would be modified and that the pending foreclosure proceeding would be terminated."). To the extent that the complaint relies on such a contract theory, it fails to state a claim upon which relief can be granted because the agreement was not in writing as required by the statute of frauds.

The complaint also includes other allegations suggesting that the core of the alleged contract was a Trial Period Plan agreement to participate in a mortgage modification process.[4] Construing the complaint in favor of Markey, she alleges, albeit inconsistently, that she entered into a TPP agreement with Defendants that was at least in part in writing. *See* Compl. ¶ 5 ("This TPP Agreement [proposed by Ditech] was in the form of written and oral communications that included expressed terms requiring the Plaintiff to provide certain information after which time the Defendants would complete a formal offer proposing a permanent loan modification.") Yet nowhere does Markey allege that either of the Defendants signed the TPP, as required by the statute of frauds. I therefore grant the motion to dismiss as to Count One.

### ii.     *Breach of the Implied Covenant of Good Faith and Fear Dealing (Count Two)*

Because Markey has not plausibly alleged the existence of an enforceable contract, I must also dismiss her claim of breach of the implied covenant of good faith and fair dealing. *See Maloney v. Connecticut Orthopedics, P.C.*, 47 F. Supp. 2d 244, 249 (D. Conn. 1999) ("To assert

---

[4] Defendants also suggest that Markey claims a breach contract based on a theory that she has private right of action or standing as a third party beneficiary to enforce HAMP or the NMS. However, Markey does not appear to make these claims. While her complaint references both HAMP and the NMS, she argues that the programs should inform the court's interpretation of the alleged mortgage modification process agreement, as discussed *infra*, rather than provide a private right of action. (ECF No. 30 at 4.)

a claim based on the covenant of good faith and fair dealing, a contract must have been in existence.")

  *iii.*  *Promissory Estoppel (Count Three)*

  Defendants next contend that Markey's promissory estoppel claim fails as a matter of law because she does not allege a sufficiently clear and definite promise to grant a loan modification, and the alleged agreement lacks key terms such as interest rate and payment amount.[5] "A fundamental element of promissory estoppel… is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." *D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High Sch.*, 202 Conn. 206, 213 (1987).

  Drawing all reasonable inferences in Markey's favor, I find that she does allege a sufficiently clear and definite promise that Defendants could reasonably have expected to induce reliance. Specifically, she alleges that Defendants promised that they would timely complete the process to propose a permanent loan modification if she provided certain information. *See* Compl. ¶ 5; *see also* Compl. ¶ 18 ("The Defendants breached expressed and implied terms that required them to extend the offers of a permanent modification within a reasonable period of

---

[5] Defendants did not raise a statute of frauds defense in connection with the promissory estoppel claim. I therefore do not address it here, except to note that the applicability of statute of frauds to promissory estoppel appears to be an undecided issue in Connecticut. *See Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 89 n. 38 (2005) ("This court previously has not addressed whether promises that otherwise would be subject to the requirements of the statute of frauds may be enforced on promissory estoppel grounds in the absence of compliance with the statute of frauds"). In a footnote, Defendants argue that Markey's promissory estoppel claim also fails because she cannot establish detrimental reliance. Specifically, Defendants assert that "[a]t the time Markey applied for a loan modification, she had defaulted and judgment of strict foreclosure had already entered." (ECF No. 21 at 13.) I do not address that argument here, because to do so would require me to go beyond the pleadings. Though Defendants included a "Loan Modification Request" as Exhibit F (*Id.* at 4), it is not clear if this was Markey's first or only request, nor is it clear how the request corresponds with the allegations in the complaint.

time following the Plaintiff's performance as required under TPP Agreements."). I am persuaded

by a similar Seventh Circuit case,[6] in which the court reasoned that even though the TPP

agreement "did not specify the exact terms of the permanent loan modification, including the

interest rate, the principal balance, loan duration, and the total monthly payment," it nevertheless

clearly required that the mortgagee "offer *some* sort of good-faith permanent modification to

[Plaintiff] consistent with HAMP guidelines." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547,

644, 645 (7th Cir. 2012) (emphasis in original); *see also Corvello v. Wells Fargo Bank, NA*, 728

F.3d 878, 883 (9th Cir. 2013) ("The more natural and fair interpretation of the TPP is that the

servicer must send a signed Modification Agreement offering to modify the loan once borrowers

meet their end of the bargain…. there could be no actual mortgage modification until all the

requirements were met, but the servicer could not unilaterally and without justification refuse to

send the offer."); *Bosque v. Wells Fargo Bank, N.A.,* 762 F. Supp. 2d 342, 352 (D. Mass. 2011)

("the TPP contains all essential and material terms necessary to govern the trial period

repayments and the parties' related obligations.").[7]

    With regard to HAMP guidelines, the court in *Wigod* explained that these guidelines,

though not providing for a private right of action themselves, inform the interpretation of the

terms of the TPP. *Wigod*, 673 F.3d at 555 ("HAMP guidelines provided precisely [the] existing

---

[6] As a recent decision in this district noted, there is considerable disagreement among courts as to whether TPP agreements are enforceable with regard to contracts: "[t]he Second Circuit has not weighed in on the issue, but the First, Ninth, and Seventh Circuits have held that the TPP is an enforceable contract." *Henderson v. Wells Fargo Bank*, NA, No. 3:13-CV-378 (JBA), 2016 WL 324939, at *4 n. 5 (D. Conn. Jan. 27, 2016) (citing cases).

[7] Although the discussions of the TPP in these cases focused on whether the plaintiff had adequately pled breach of contract claims, the finding that the TPP was sufficiently definite to form the basis of a contractual claim also supports my conclusion that the plaintiff's allegations here are sufficiently definite to plead a claim of promissory estoppel.

standard by which the ultimate terms of [Plaintiff's] permanent modification were to be set" and "HAMP guidelines unquestionably informed the reasonable expectations of the parties to [Plaintiff's] TPP Agreement.") (internal quotation marks omitted).

Defendants' motion to dismiss the promissory estoppel claim is therefore denied.

### B.   Motion for Temporary Restraining Order and/or Preliminary Injunction

Finally, Markey's motion for temporary restraining order and/or preliminary injunction is denied, because the proposed injunction of state-court eviction proceedings is barred by the Anti-Injunction Act, 28 U.S.C. § 2283. The Anti–Injunction Act provides that a district court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id*. Markey has not demonstrated that any of these limited exceptions apply to her case. Furthermore, "[c]ourts in this Circuit have repeatedly held that the Anti–Injunction Act bars a federal court from enjoining state-court eviction proceedings." *Allen v. New York City Hous. Auth.*, No. 10 CIV. 168 CM DCF, 2010 WL 1644956, at *3 (S.D.N.Y. Apr. 20, 2010) (citing cases). "[P]rinciples of equity, comity, and federalism… must restrain a federal court when asked to enjoin a state court proceeding," *Mitchum v. Foster*, 407 U.S. 225, 243 (1972).

### IV.   Conclusion

For the foregoing reasons, the Motion to Dismiss (ECF No. 21) is GRANTED as to Counts One and Two and DENIED as to Count Three. The Motion for Temporary Restraining Order and/or Preliminary Injunction (ECF No. 2) is DENIED.

Markey may choose, if she wishes, to re-plead her breach of contract and breach of the covenant of good faith and fair dealing claims in an amended complaint that addresses the defects discussed herein, consistent with Fed. R. Civ. P. 11. Otherwise, she may simply proceed

on the alternative promissory estoppel claim. Markey is granted leave to file any amended complaint within 21 days of this ruling; if no amended complaint is filed within that time, the case will continue as to the promissory estoppel claim only. Should Markey choose to amend her complaint and should Defendants then file a new motion to dismiss, Defendants may incorporate by reference any prior briefing.

      SO ORDERED this 22nd day of September, 2016, at Hartford, Connecticut.


                _____/s/_____
                Michael P. Shea
                United States District Judge